MICROSOFT CORPORATION, Appellant,

v.

Mark MANNING, Steve Collins, and Dana Schnitzer, on Behalf of Themselves and all Others Similarly Situated, Appellees.

No. 06–95–00058–CV.

Court of Appeals of Texas, Texarkana.

Nov. 13, 1995.

Rehearing Overruled Dec. 5, 1995.

Harriet E. Miers, Locke Purnell Rain Harrell, Dallas, Max A. Sandlin, Jr., Sandlin & Buckner, Marshall, for appellant.

Sam Baxter, McKool Smith, Marshall, Gary Cruciani, McKool Smith, Dallas, Franklin Jones, Jr., Jones, Jones & Curry, Inc., Marshall, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Justice.

This is an appeal of the trial court's order granting class certification to a suit by appellees against Microsoft Corporation for breach of express and implied warranty, unjust enrichment, and violations of the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act and the Washington state Consumer Protection Act.

Microsoft contends that the district court abused its discretion in certifying the class because: the claims are founded on an unrecognized liability theory; the certification will result in improper claim splitting; the appellees do not meet the commonality and typicality requirements of TEX.R.CIV.P. 42(a) and (b)(4); there is not an adequate representative for the class as required by Rule 42(a)(4); the court improperly relied on the testimony of an expert witness without determining whether it was scientifically reliable; and the certification will violate Microsoft's and the class members' due process rights under the state and federal constitutions. We will affirm the certification order.

Microsoft Corporation, based in Washington state, supplies software for personal computers. At issue is its software MS–DOS 6.0, or Microsoft Disk Operating System. The disk operating system helps the user control the computer's basic functions, such as retrieving information stored in the computer's memory, writing and reading information stored on hard or floppy disks, and receiving typed characters from the keyboard.

Computer information is stored primarily on the hard drive. Users can increase their storage space by upgrading their equipment and buying newer, larger hard disks. In the late 1980s, software companies introduced disk compression software, which compresses the data on a hard disk, thereby increasing a computer's storage capacity by installing relatively inexpensive software instead of more expensive hardware.

MS–DOS 6.0, introduced in 1993, contained disk compression software. Microsoft bought the rights to Vertisoft's compression program called DoubleDisk. The appellees argue that Microsoft used the compression feature, calling it DoubleSpace, with MS–DOS 6.0 without adequate testing. The compression software was faulty, they argue, and after Microsoft released it, customers started complaining that the compression software could in some cases destroy their data. The software was sold retail by Microsoft and retail dealers, as well as by various original equipment manufacturers who sold it already installed on computers.

Appellees allege that, in order to correct the defect and provide new "data protection technology," Microsoft released an update, called MS–DOS 6.2. A reviewer's guide that Microsoft published in August 1993 stated, "We hope this new technology will not only provide extra protection for customers' data, but also increase customer's comfort in dealing with disk compression."

Appellees Mark Manning, Steve Collins, and Dana Schnitzer filed suit against Microsoft on December 6, 1993, alleging breach of express warranty, breach of implied warranty, unjust enrichment, and violations of the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C.A. § 2301, et seq. (West 1989), and the Washington Consumer Protection Act, WASH.REV. CODE § 19.86.010, et seq. (West 1989).[1]

The appellees contend that Microsoft released MS–DOS 6.2 to correct the problems associated with MS–DOS 6.0 and Double-Space that caused loss of data. Microsoft sold MS–DOS 6.2 retail for $9.95. The appellees argue that the company should have corrected the problems with MS–DOS 6.0 without charge. They allege that some 10.5 million computer users acquired MS–DOS 6.0 and were damaged when they received a defective product that would cost $9.95 to remedy. The appellees do not seek consequential damages, i.e., damages for lost data. They seek as damages only the $9.95 upgrade fee they would have to pay to get MS–DOS 6.2, which corrected the defect in MS–DOS 6.0.

Microsoft argues that relatively few people, about three in 1,000, lost data after using MS–DOS 6.0. It alleges that most users lost no data and thus sustained no damage.

The district court held a class certification hearing February 8–10, 1995. In an order signed May 31, 1995, the district court, finding that the appellees had met the requirements of Rule 42(a) and (b)(4), certified as a class "all persons and entities in the United States of America who have purchased or licensed MS–DOS 6.0 with DoubleSpace ("MS–DOS 6.0") sold separately and not pre-installed in any computer hardware and sold pre-installed in a computer's hardware." The certified causes of action are claims for economic damages, excluding consequential damages such as those resulting from alleged data loss. On June 8, 1995, the court entered findings of fact and conclusions of law. Microsoft appeals pursuant to TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(3) (Vernon Supp. 1995), allowing the appeal of interlocutory class certification orders, and TEX.R.CIV.P. 42, alleging the district court abused its discretion by misapplying Rule 42, relating to class action certification.

## I.

Microsoft argues that the district court abused its discretion in certifying the class because the claims are founded on an unrecognized liability theory tailored to exclude the essential elements of individual causation and damages. It argues that the appellees, by excluding consequential damages and seeking only the upgrade price as damages, seek to certify a class of plaintiffs who have suffered no damages because they have lost no data. Without a common actual damage, Microsoft says, the appellees' case shatters into countless individual questions of law and fact not suitable for class action treatment.

One or more class members may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder is impracticable, (2) the class has common questions of law or fact, (3) the representatives' claims are typical of the class claims, and (4) the representatives will fairly and adequately protect the class interests. TEX.R.CIV.P. 42(a).

The appellees' attorneys stipulated that McKool Smith, Dallas, and Jones, Jones & Curry, Marshall, would enter appearances in the Pennsylvania case if that court, rather than the Texas court, certified a class. The law firms representing the California case's plaintiffs have filed an appearance in the Texas court on behalf of the named plaintiffs.

---

1. This is one of three related cases, the others being *Stuessy v. Microsoft Corp.*, No. 9308–4784 (Court of Common Pleas of Philadelphia County), filed in September 1993, in which the plaintiffs seek consequential damages, and *Davis v. Microsoft Corp.*, No. 963597 (Superior Court for the County of San Francisco), filed in September 1994. The Philadelphia law firm of Kohn, Swift & Graf represents plaintiffs in all three cases.

Parties may maintain a class action if they and the action meet the stated requirements and the court finds that questions of law or fact common to the class members predominate over questions affecting individuals only, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (1) the interest of the class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by the members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Tex.R.Civ.P. 42(b)(4).

 It is not necessary for the plaintiffs to prove a prima facie case of liability to be entitled to certification. *Clements v. League of United Latin American Citizens (LULAC)*, 800 S.W.2d 948, 951 (Tex.App.—Corpus Christi 1990, no writ); *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 336–37 (Tex.App.—Dallas 1987, writ dism'd w.o.j.). The probability of the plaintiffs' success on the merits of their claims is an improper standard by which to measure class certification. *Clements v. League of United Latin American Citizens (LULAC)*, *supra.*

 A trial court has broad discretion in determining whether a lawsuit should be maintained as a class action. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). Where the court considers class certification early in a proceeding, before supporting facts are fully developed, it should favor maintaining the class action. *Id.* at 376. The court may always subsequently modify or decertify the class. *Id.*

 A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721

(1986). A court does not abuse its discretion if the relevant evidence is conflicting. *Vinson v. Texas Commerce Bank—Houston, N.A.*, 880 S.W.2d 820, 823 (Tex.App.—Dallas 1994, no writ). It does abuse its discretion when it misapplies the law to undisputed facts. *Id.*

Microsoft contends that, by including in the class individuals whose only injury was purchasing the software, the trial court relied on a novel and improper theory of liability. It argues that appellees have structured their class to eliminate two essential elements of their claims, causation and damages. Without this improper theory, it alleges, the class members would be only those individuals who actually lost data. Microsoft argues that including all purchasers as class members will lead to a proliferation of individual fact questions, such as whether individual class members lost data, whether the product caused the data loss, and what actual damages the user suffered.

 Microsoft contends that other courts have rejected the theory that a defect that does not manifest itself by causing consequential damages nevertheless damages the individual who purchases the defective product. It relies mainly on the case of *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y.1982), where the court said that the theory that an unmanifested defect " 'ipso facto caused economic loss' and breach of implied warranty is simply not the law." *See also Barbarin v. General Motors Corp.*, No. 84–0888, 1993 WL 765821 (D.C.D. Sept. 22, 1993); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657–58 (D.N.J.1986);[2] *Collins v. Safeway Stores, Inc.*, 187 Cal.App.3d 62, 231 Cal.Rptr. 638, 645 (1986).

In *Feinstein v. Firestone Tire and Rubber Co.*, *supra*, the court found that where a purported automobile tire defect never manifested itself, the tires performed as expected and so did not breach the implied warranty

---

**2.** Tex.R.Civ.P. 42 is patterned after the federal class action rule, Fed.R.Civ.P. 23. Federal decisions and authorities interpreting it are persua-

under U.C.C. § 2–314(2)(c) (1989).[3] The court noted that most of the tires sold to putative class members, by performing as they were supposed to for as long as they were supposed to, lived up to that "minimum level of quality" implied by Section 2–314(2)(c).

*Barbarin v. General Motors Corp., supra,* dealt with GM's X-cars, which the plaintiffs alleged had faulty brakes. The plaintiffs sued under the Magnuson–Moss Warranty Act, which provides that a consumer who is damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty may bring suit for damages. 15 U.S.C.A. § 2310(d)(1). As a condition precedent to class actions, the Act requires that the warrantor be given reasonable opportunity to cure the deficiency. 15 U.S.C.A. § 2310(e). GM argued that its brake-related recalls cured the deficiency. The plaintiffs argued that they suffered economic damages on purchase because the value of the car received was less than the value of the car promised and that the cure was irrelevant except as an offset to damages. The court, relying in part on *Feinstein v. Firestone Tire and Rubber Co., supra,* stated that most cars with the brakes at issue never failed and that it would not certify as a class those purchasers whose brakes did not fail.

In *Yost v. General Motors Corp., supra,* the plaintiff alleged that water, oil, and coolant tended to mix in the crankcase of cars and that the leak was likely to cause irreparable engine damage. The court said that the plaintiff had not alleged damages, but only that "the potential leak is 'likely' to cause damage and 'may' create potential safety hazards."

In *Collins v. Safeway Stores, Inc., supra,* contaminated and uncontaminated eggs were commingled for sale. The appellate court upheld the trial court's refusal to certify the class, in part because proposed economic damages were not ascertainable where no single class member could prove he or she bought the contaminated eggs.[4]

Microsoft also cites *American Suzuki Motor Corp. v. Superior Court of Los Angeles County,* 37 Cal.App.4th 1291, 44 Cal.Rptr.2d 526, *modified,* (Cal.Ct.App. Sept. 21, 1995). There, in an implied warranty case involving Suzuki Samurai rollovers, the court found that most of the cars did not roll over because of high centers of gravity and so were fit for the "ordinary purpose" for which they were used.

The appellees rely on cases in which courts have certified classes including members who purchased defective products whose defects never manifested themselves. *See, e.g., Martin v. Amana Refrigeration, Inc.,* 435 N.W.2d 364 (Iowa 1989) (class members included those who purchased allegedly defective furnace and water heater units where units did not fail); *In re Cadillac V8-6-4 Class Action,* 93 N.J. 412, 461 A.2d 736 (1983) (court certified class whose members included all owners of engines at issue regardless of whether engines manifested problems); *Delgozzo v. Kenny,* 266 N.J.Super. 169, 628 A.2d 1080 (Ct.App.Div.1993) (appellate court ordered trial court to certify as a class New Jersey *purchasers* of furnaces and boilers with a "common design defect").

---

sive. *RSR Corp. v. Hayes,* 673 S.W.2d 928, 931–32 (Tex.App.—Dallas 1984, writ dism'd).

3. U.C.C. § 2–314 (1989) reads, in pertinent part, as follows:

(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . . . .

(2) Goods to be merchantable must be at least such as

. . . . . . . . . . . . . . . .

(c) are fit for ordinary purposes for which such goods are used; . . . .

4. Microsoft also cites *In re Fibreboard Corp.,* 893 F.2d 706 (5th Cir.1990), for the proposition that Texas law requires the plaintiffs to establish causation and damages for each individual class member. There, however, the trial court attempted to set up a novel procedure for handling class action asbestos-related cases. In one phase of the case, select class members were to get trials from which damages for all class members against all defendants were to be extrapolated. The appellate court held that Texas' substantive law required that each plaintiff prove which defendant supplied the product causing the injury.

They argue that the cases relied on by Microsoft show, at most, a split of authority.

In both *Feinstein v. Firestone Tire and Rubber Co., supra,* and *Barbarin v. General Motors Corp., supra,* which relied in part on the former, the defendant companies offered a remedy by recalls. Microsoft offered no such remedy. *Feinstein v. Firestone Tire and Rubber Co., supra,* and *American Suzuki Motor Corp. v. Superior Court of Los Angeles County, supra,* also were implied warranty cases in which the courts found that the particular products were fit for their ordinary purposes.

Software, however, is not like tires or cars. Tires and cars have a distinctly limited usable life. At the end of the product's life, the product and whatever defect it may have had pass away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for. Software's useful life, however, is indefinite. Even though the defect is not manifest today, perhaps because the user is not using the data compression feature, it may manifest itself tomorrow. The only way for an MS–DOS 6.0 buyer to avoid the possibility of injury is to pay for the upgrade, never use the data compression feature, or use another operating system. The buyer never gets what he bargained for, i.e., an operating system with an effective data compression feature.

■ If we view the case as a breach of warranty case on a grand scale, the liability theory does not seem novel or improper. Away from the class action context, the measure of breach-of-warranty damages is the difference between the market value of property as warranted and the market value of property as delivered. *Sweco, Inc. v. Continental Sulfur & Chem.,* 808 S.W.2d 112, 117–18 (Tex.App.—El Paso 1991, writ denied). In the absence of proof of market value as warranted, the price agreed on by the parties to the sale of personal property may be taken as the market value of that for which the parties contracted. *Chrysler Corp. v. Schuenemann,* 618 S.W.2d 799, 805 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

■ Microsoft expressly warranted that MS–DOS 6.0 would "perform substantially in accordance with the accompanying Product Manual(s) for a period of 90 days from the date of receipt," or Microsoft would replace or repair the software. Because of a defect in the software, which we almost must presume at this stage, MS–DOS 6.0 could not perform in accordance with the manual, and purchasers had to pay about $10.00 to correct the problem. The purchasers thought they were getting software that would be repaired without charge and in the end had to pay about $10.00 for repairs. Thus, MS–DOS 6.0 was worth about $10.00 less than the original purchase price. The appellees can mount similar arguments for their implied-warranty actions in that the software was not fit for the ordinary purpose for which software is used. Even if we accept Microsoft's arguments that few MS–DOS 6.0 users actually lost data, we have no way of knowing how many users were dissuaded from using DoubleSpace because of the risk of data loss and the well-publicized reports of the perceived defect. These purchasers may have paid for a data compression feature that they were afraid to use.

We believe that, if appellees prove that an individual defect exists in all original MS–DOS 6.0 software, it is not necessary for the purchasers to actually suffer a loss of data as a result of that defect for them to suffer damage. They have received less than they bargained for when they acquired the product.

■ Microsoft further argues that under the Washington Consumer Protection Act, WASH.REV.CODE § 19.86.090, the appellees must prove injury or damage. *Thomas v. Wilfac, Inc.,* 65 Wash.App. 255, 828 P.2d 597, 603, *review denied,* 119 Wash.2d 1020, 838 P.2d 692 (1992). It also argues that to prove unjust enrichment, which in Texas is not an independent cause of action but the result of an implied or quasi contract, *LaChance v. Hollenbeck,* 695 S.W.2d 618, 620 (Tex.App.—Austin 1985, writ ref'd n.r.e.), the appellees must establish that they paid for the software, that the consideration, or software, failed in whole or in part, and that it would be unconscionable for Microsoft to retain the

money. *See PIC Realty Corp. v. Southfield Farms, Inc.*, 832 S.W.2d 610, 614 (Tex. App.—Corpus Christi 1992, no writ). We conclude that the purchase of the defective software and the $10.00 upgrade-repair cost constitute sufficient injury under the WCPA and under the theory of unjust enrichment.

Again, we do not believe that a purchaser who buys software that cannot perform as promised must nevertheless use the software and lose data before he can claim economic damage. We conclude that the trial court did not abuse its discretion by certifying a class whose members include those whose mere purchase of a defective product constitutes the purported injury.

## II.

■ Microsoft contends that the court abused its discretion by certifying a class of plaintiffs whose claims will be impermissibly split. It argues that, by tailoring the class to exclude parties claiming consequential damages, the court creates a risk that res judicata, or claim preclusion, will cut off those parties if they try to press their claims for consequential damages because a subsequent trial court may decide that they should have pressed their claims in the instant suit.

■ When appropriate, parties may bring or maintain a class action with respect to particular issues. TEX.R.CIV.P. 42(d)(1); *see Cortright v. Resor*, 325 F.Supp. 797, 808 (E.D.N.Y.), *rev'd on other grounds*, 447 F.2d 245 (2nd Cir.1971), *cert. denied*, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972) (construing Federal Rule 23(c)(4)(A)); *St. Augustine High Sch. v. Louisiana High Sch. Athletic Ass'n*, 270 F.Supp. 767, 774 n. 8 (E.D.La.1967), *aff'd*, 396 F.2d 224 (5th Cir. 1968) (construing Federal Rule 23(c)(4)(A)). Federal courts have used Federal Rule 23(c)(4)(A) to allow partial class actions to go forward while reserving questions of reliance, *see Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), and damages, *Hill v. Western Elec. Co.*, 672 F.2d 381, 387 (4th Cir.), *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982), and other issues, *see, e.g., Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir.1982), *cert.*

*denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983) (class certification of school district students questioning constitutionality of canine sniff searches limited to liability, when class members might disagree over appropriate relief); *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977) (in action brought against insurance company by discharged black insurance salesmen who alleged racial discrimination, district court was allowed to limit possible class action to issues related to assignment and transfer of the agents because virtually all the evidence was directed to these practices); *also see generally* 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1790 (1986).

In *Sullivan v. Chase Inv. Serv.*, 79 F.R.D. 246 (N.D.Cal.1978), four individuals sued an investment advisory service, CIS, alleging fraud. The parties, seeking class certification under Federal Rule 23, pursued only certain fraud claims, while omitting other claims that could have been asserted by other plaintiffs. The defendants argued that this was improper claim splitting. The court disagreed and said:

> [T]he fact that CIS committed frauds unsuitable for class treatment as well as frauds suitable for class treatment does not mean that certification of classes in the latter situation is improper. Clients who have claims not raised in this class action because the claims are unsuitable for class treatment can bring those claims on an individual basis, and *res judicata* will not bar those claims because absent class members had no opportunity to litigate those issues in this lawsuit.

What defendants have characterized as "splitting" causes of action is perfectly appropriate under Rule 23. It is not uncommon for defendants to engage in a course of conduct which gives rise to a variety of claims, some amenable to class treatment, others not. Those claims that are amenable should be prosecuted as class actions in order to realize the savings of resources of courts and parties that Rule 23 is designed to facilitate.

Class members whose claims are not actually litigated should not be estopped by res judicata. *See Marshall v. Kirkland,* 602 F.2d 1282, 1298 (8th Cir.1979); *see generally* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4455 (1981 & Supp.1995).

In *Franklin v. Donoho,* 774 S.W.2d 308 (Tex.App.—Austin 1989, no writ), the appellate court held that a trial court did not abuse its discretion by issuing a class-action order even where parties would have to litigate many disputed individual issues. The court noted that "Section (d) of Rule 42 expressly provides for the maintenance of a class action with respect to particular issues." *Id.* at 313.

Microsoft relies primarily on *Feinstein v. Firestone Tire and Rubber Co., supra; Chmieleski v. City Prods. Corp.,* 71 F.R.D. 118, 147–49 (W.D.Mo.1976); and *Pearl v. Allied Corp.,* 102 F.R.D. 921, 924 (E.D.Pa. 1984), to suggest that the trial court's actions were impermissible claim splitting.

In *Feinstein v. Firestone Tire and Rubber Co., supra,* the court said that the plaintiffs risked impermissibly splitting their claims by limiting them to economic damages arising from breach of warranty and excluding consequential damages, including death, injury, and accident-related property damages. In reaching its decision, however, the court did not mention Federal Rule 23(c)(4)(A), and it cited only non-class-action cases in which parties impermissibly split their claims or were precluded from asserting claims because of res judicata. *Pearl v. Allied Corp., supra,* relies on the former.

In *Chmieleski v. City Prods. Corp.,* 71 F.R.D. at 147–49, the court questioned whether the named plaintiffs' limitation on damage claims would raise the possibility that claim preclusion could cut off other plaintiffs' claims.

Microsoft further argues that Federal Rule 23(c)(4) and Texas Rule 42(d) allow courts to certify certain causes of action in a single case and in the same action not certify other issues not suitable for class action. Presumably, Microsoft would suggest that for a party to pursue consequential damages, the party must intervene as a named plaintiff in the instant suit. This is not the law. The Texas rule envisions a situation where joinder is impracticable, Rule 42(a)(1), and where class members may opt out, Rule 42(c)(2).

Here, the trial court limited the certified claims to those for economic damages, excluding consequential damages such as those from alleged data loss. Rule 42(d)(1) is designed to give a trial court flexibility in structuring class action suits. The parties seeking consequential damages for data loss still can opt out and pursue their claims, because the trial court specifically excluded those claims from the class action, and those claims will not be litigated. *See Marshall v. Kirkland, supra.*

### III.

Microsoft asserts that the court abused its discretion because the appellees did not meet the commonality and typicality requirements of Rule 42(a) and the related requirements of Rule 42(b)(4). It contends that legal and factual issues affecting individuals, and not common issues of law and fact, predominate.

Rule 42(a)(2) does not require that all or even a substantial portion of the legal and factual questions be common to the class. It requires only that some common legal or factual questions exist. A single common question could provide adequate grounds for a class action. *Wente v. Georgia–Pacific Corp.,* 712 S.W.2d 253, 255 (Tex. App.—Austin 1986, no writ). The test in evaluating the predominance issue is not whether the common issues outnumber the individual issues, but whether the court and the litigants will concentrate most of their efforts on the common or individual issues. If the common issues predominate, a judgment in favor of the class members should settle the entire controversy, and all that should remain is for other class members to file proof of their claims. *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 772 (Tex.App.—Fort Worth 1986, no writ).

The trial court in its findings of fact and conclusions of law found the following undisputed common facts: each putative class

member seeks the same amount of damages, about $10.00, representing the MS–DOS 6.2 upgrade price; the design and architecture of each MS–DOS 6.0 copy is the same; and each warranty Microsoft provided for each retail sale of MS–DOS 6.0 is the same, with the same purported exclusion of implied warranties, the same disclaimer of liability for consequential damages, and the same Washington choice-of-law provision.

Disputed common factual questions include: whether the MS–DOS 6.0 design and architecture is defective; whether the alleged defect is a common defect; whether Microsoft adequately tested MS–DOS 6.0 before release; whether Microsoft knew of the alleged defect; whether the DoubleSpace feature tends to increase the data loss risk; whether Microsoft failed to warn users that using DoubleSpace could lead to data loss; whether Microsoft failed to warn users to back up their data before using DoubleSpace; whether Microsoft misrepresented to the public that MS–DOS 6.0 was safe and easy to use; whether Microsoft designed some of the new features contained in MS–DOS 6.2 to correct the alleged defects of MS–DOS 6.0; whether Microsoft should have included these new features in MS–DOS 6.0; and whether the plaintiffs have been damaged and, if so, the amount of the damages.

Microsoft argues individual fact questions predominate. For example, MS–DOS 6.0 was distributed by retail software dealers, by original equipment makers, and by Microsoft itself; the question of whether Washington law applies to each class member on the retail upgrade question will require the court to examine facts as to each member; hundreds of original equipment makers in different states supplied the software with various hardware configurations and offered their customers hundreds of different warranties; many MS–DOS 6.0 licensees did not use DoubleSpace; the plaintiffs' defect theory relies on individual fact issues regarding how the software was used, what other software was used with MS–DOS 6.0, and how the customers' hardware was configured; and the measure of damages raises individual issues because customers got their upgrades in retail packages, or free either from on-line services or from original equipment makers.

Regardless of the hardware and software configuration and regardless of whether a licensee or computer operator used Double-Space, whether MS–DOS 6.0 had a common design flaw that could lead to data loss is a common issue. Also, because appellees are not seeking data-loss damages, questions of data loss are irrelevant. Further, although the purchasers may have gotten the software from different sources, the plaintiffs are suing Microsoft alone. Microsoft sold the software acquired by the ultimate consumers, and it warranted it either to retail dealers or individual purchasers. Also, questions about how much purchasers paid for MS–DOS 6.2 is a question of the proof of damages rather than the common measure of damages, i.e., someone who got MS–DOS 6.2 free could not prove his damages.

The court found the following common legal questions: whether Microsoft's choice of law provisions should apply; whether the plaintiffs' purported exclusion of consequential damages is proper; whether Microsoft should have made MS–DOS 6.2 available to MS–DOS 6.0 buyers free or whether Microsoft was legally entitled to charge for MS–DOS 6.2; whether Microsoft's actions breached its express warranty; whether Microsoft's attempted disclaimer of implied warranties is enforceable under applicable law; if such disclaimer is not enforceable, whether Microsoft's actions breached its implied warranties; whether Microsoft's actions violated the Magnuson–Moss Warranty Act; whether Microsoft committed unfair and deceptive trade practices; and whether Microsoft has been unjustly enriched.

Microsoft argues that individual questions of law will predominate. It says that the appellees have the burden of showing the uniformity of state laws, *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987); that state laws vary considerably on the question of warranties and the requirement of privity, and thus countless individual questions will be raised; and that the choice of law question will raise individual fact issues.

The trial court has not yet made a choice-of-law decision, so any speculation about the case's manageability on that basis is not appropriate. Also, courts have held that applying the law of disparate jurisdictions when the laws are virtually identical does not rule out nationwide class certification. *See, e.g., In re Asbestos School Litigation*, 104 F.R.D. 422, 434 (E.D.Pa.1984), *aff'd in part, rev'd in part on other grounds*, 789 F.2d 996 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Here, appellees are relying, in part, on an express warranty with a Washington choice-of-law clause, on the U.C.C.'s implied warranty of merchantability, and on a federal statute.

Although the court in *Walsh v. Ford Motor Co., supra*, construing Federal Rule 23, seems to place on the class proponent the burden of proving the commonality of the applicable law through extensive analysis of state law variances, Texas law seems to place the burden of showing those differences on the party asserting the differences. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex.App.—Houston [14th Dist.] 1995, n.w.h.); *see also In re First RepublicBank Sec. Litigation*, 1989 WL 108795, at *10 (N.D.Tex.1989) (construing Federal Rule 23); *Longden v. Sunderman*, 123 F.R.D. 547, 555–56 (N.D.Tex.1988). Reference to federal case authority construing Rule 23 is appropriate only in the absence of Texas or Fifth Circuit case law. *Weatherly v. Deloitte & Touche*, 905 S.W.2d at 648; *see Adams v. Reagan*, 791 S.W.2d 284, 288 (Tex.App.— Fort Worth 1990, no writ).

If the trial court eventually finds other states' laws apply, it can deal with their application by creating subclasses under Rule 42. Conversely, if it finds that applying other states' laws destroys commonality or finds that common issues of law or fact do not predominate, it can decertify. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d at 376.

Microsoft also argues that its affirmative defenses—intervening or superseding cause; error, abuse, or misapplication; contributory negligence; and failure to comply with warranty terms—will raise individual legal and factual issues. Texas courts have rejected the argument that affirmative defenses nec-

essarily destroy commonality. *See, e.g., Dresser Indus., Inc. v. Snell*, 847 S.W.2d at 373; *Angeles/Quinoco Sec. Corp. v. Collison*, 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Adams v. Reagan*, 791 S.W.2d at 290. Furthermore, the court may have determined that the affirmative defenses may in fact be common issues.

Class representatives satisfy the typicality requirement when they show that their claims have the same essential characteristics as those of the class as a whole. *Chevron U.S.A. Inc. v. Kennedy*, 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.); *Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d at 334. To be typical, the named claims must arise from the same event or course of conduct giving rise to the other class members' claims. The claims must be based on the same legal theory. *Adams v. Reagan, supra.*

Microsoft argues that the appellees' claims are not typical because of individual factual and legal issues involved, including: (1) whether Manning, Collins, or Schnitzer used DoubleSpace; (2) whether they relied on Microsoft representations; (3) whether Manning and Collins, who acquired MS–DOS 6.0 from original equipment makers, have a valid claim against Microsoft; and (4) whether Microsoft has unique defenses to Manning, Collins, and Schnitzer's claims that make them unsuitable representatives. Microsoft says the named appellees are not typical in that they either did not use DoubleSpace or used it satisfactorily, did not rely on Microsoft's representations about MS–DOS 6.0, have claims against original equipment makers rather than Microsoft, or are subject to unique defenses that make them not typical.

Questions of reliance are irrelevant in a breach of warranty action. Reliance also is irrelevant in an unjust enrichment, or implied or quasi contract, action. Here, the appellees allege that they acquired a defective Microsoft product, either from a retailer or from an original equipment maker licensed by Microsoft. Even though some purchased their software from original equipment makers, they are not suing the original equipment makers.

The trial court did not abuse its discretion in finding that the appellees met the commonality and typicality requirements of Rule 42(a) and the related requirements of Rule 42(b)(4) because some common legal or factual questions exist, *Wente v. Georgia–Pacific Corp., supra;* the court could have determined that it and the litigants will concentrate most of their efforts on common issues, *Life Ins. Co. of Southwest v. Brister, supra;* and it could have determined that the named appellees' claims are typical of the class claims.

## IV.

■ Microsoft contends that the appellees did not prove that they will fairly and adequately protect the interests of the putative class members.

■ The adequacy of representation is a fact question that the trial court determines based on the individual circumstances of each case. It is addressed to the trial court's discretion. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d at 373.

■ Adequate representation embodies two separate concepts. First, the class representatives' interests must not be antagonistic to those of the remaining class members. *Employers Casualty Co. v. Texas Ass'n of Sch. Bd. Workers' Compensation Self–Insurance Fund,* 886 S.W.2d 470, 475 (Tex.App.—Austin 1994, writ dism'd w.o.j.). Only a conflict that goes to the very subject matter of the litigation will defeat a party's representative status. *Dresser Indus., Inc. v. Snell, supra.* This issue often is collapsed into typicality analysis. *Employers Casualty Co. v. Texas Ass'n of Sch. Bd. Workers' Compensation Self–Insurance Fund, supra.* To determine typicality, the trial court compares the claims and defenses of the named plaintiffs with those of the class. The named plaintiffs' claims must arise from the same event or course of conduct giving rise to the claims of the other class members. The claims also must be based on the same legal theory. *Adams v. Reagan, supra.*

■ Second, class counsel must be sufficiently qualified and experienced to prosecute the action vigorously. *Employers Casu-*

alty Co. v. Texas Ass'n of Sch. Bd. Workers' Compensation Self–Insurance Fund, supra.* The question is whether class representatives, through their attorneys, will vigorously prosecute the class claims. *Weatherly v. Deloitte & Touche,* 905 S.W.2d at 652; *Reserve Life Ins. Co. v. Kirkland,* 1994 WL 588569 at *6, —— S.W.2d at ——.* The qualifications and experience of the class counsel is of greater consequence than the knowledge of the class representatives. *Longden v. Sunderman,* 123 F.R.D. at 558.

Microsoft argues that the class is not well defined because the named appellees, who are not seeking consequential damages, tailored the pleadings for themselves. Their victory, Microsoft says, restating its claim-splitting argument, would preclude others seeking data-loss damages.

Microsoft relies on the case of *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146 (Tex. App.—Austin 1995, n.w.h.), and argues that the named appellees are not zealous representatives because they have ceded control of the case to their attorneys. The named appellees did not appear at the certification hearing, although they had been deposed and their testimony was admitted into evidence. Microsoft notes that Manning did not know that the McKool Smith firm was representing him and that Collins did not know that Sam Baxter represented him. Manning had not seen a copy of the original petition before his deposition, and he did not know that Dell, his original equipment maker, not Microsoft, extended the express warranty on his copy of MS–DOS 6.0. Microsoft also notes that the named appellees were not aware of the fees their attorneys may recover if they should prevail. The attorneys stipulated that they have no written fee agreement with any of the appellees.

In *Forsyth v. Lake LBJ Inv. Corp., supra,* the court, while noting the plaintiffs had not taken an active role in nor taken control of the litigation, also relied on the plaintiffs' intraclass antagonism. At least twelve class members intervened and opposed the class-proponents' objectives. *Id.*

Here, the appellees note that the class representatives are businessmen. Each

joined the suit because, after learning of the alleged data loss problem with DoubleSpace, he either removed the feature or spent money for MS–DOS 6.2 to correct the alleged defect. They also demonstrated familiarity with the basic issues, including the composition of the class and the damages sought. As for the representatives' unfamiliarity with their attorneys, they argue that Manning lives in Marshall, and so was unfamiliar with the Dallas attorneys, and that Collins lives in Dallas, and so was unfamiliar with the Marshall attorneys.

As to the qualifications of the plaintiffs' attorneys, Microsoft says the attorneys' conduct had been intolerable in that they were willing to forego some discovery in the Texas case when it appeared the California certification hearing would proceed first. The attorneys also have a conflict with the plaintiffs in the Pennsylvania case in that the Pennsylvania plaintiffs were seeking consequential damages and the Texas case would cut off those claims.

As to their own qualifications, appellees' attorneys argue that they have extensive experience and have committed enormous resources to the suit. They also note that Microsoft does not contest the experience or qualifications of the counsel, but only contends that the counsel have conflicts of interest with the plaintiffs in the California and Pennsylvania cases.

Questions about the adequacy of the representation are left to the discretion of the court as fact finder at this stage. The court does not abuse its discretion by basing its decision on controverted evidence. Because the court had evidence that the named appellees were adequately and fairly representing the class and evidence that their attorneys were sufficiently qualified, the trial court did not abuse its discretion by finding that the adequacy-of-representation requirements of Rule 42(a)(4) had been met.

## V.

■ Microsoft asserts that the district court abused its discretion by relying on the testimony of the appellees' expert without determining whether it was scientifically reliable, as required by the case of *E.I. du Pont*

*de Nemours & Co. v. Robinson,* 38 Tex.Sup. Ct.J. 852, —— S.W.2d —— [1995 WL 359024] (June 15, 1995). The holding in that case is that TEX.R.CIV.EVID. 702 requires the proponent to show that the expert's testimony is relevant to the issues in the case and "is based on a reliable foundation." *Id.* at 858, —— S.W.2d at ——. Microsoft argues that the trial court abused its discretion in considering the testimony of Professor Ugo Gagliardi's testimony in reaching its decision.

In *E.I. du Pont de Nemours & Co. v. Robinson, supra,* the Supreme Court reviewed the appellate court's finding that a trial court abused its discretion in refusing to admit certain scientific evidence at trial. We, however, are reviewing a certification order.

Courts of appeals have dealt with related issues when asked to pass on the factual and legal sufficiency of the evidence in certification hearings. *Dresser Indus., Inc. v. Snell, supra; National Gypsum Co. v. Kirbyville Indep. Sch. Dist.,* 770 S.W.2d 621, 626 (Tex. App.—Beaumont 1989, writ dism'd w.o.j.). The courts have held that a reviewing court should not apply trial-related evidentiary standards when reviewing a class certification order.

■ To require a trial court to rule on the admissibility of evidence at a certification hearing would require the trial court to delve into the merits of the plaintiffs' claims, which is not appropriate when reviewing a class certification order. *See Dresser Indus., Inc. v. Snell,* 847 S.W.2d at 376. The trial court need only have before it sufficient material, which need not necessarily be evidence, to determine the nature of the claims at issue. *Id.* So long as the class certification order is properly based on that material, the trial court does not abuse its discretion, even though the plaintiffs' proof ultimately may fail. *See id.*

On the issue of defect, the trial court had Gagliardi's testimony, the deposition testimony of Microsoft employees, Microsoft documents, and the parties' pleadings to help it determine the Rule 42 class certification issues. Gagliardi's testimony goes to the merits of the plaintiffs' claims, which the district

court will address at trial. The trial court in its findings of fact and conclusions of law found that Gagliardi was qualified to render the expert opinions he gave. It did not, however, otherwise say how much weight it gave his testimony as opposed to other evidence about alleged design defects. The trial court did not abuse its discretion in hearing Gagliardi's testimony at the certification hearing.

## VI.

 Microsoft contends that the trial court violated its and the class members' due process rights under the state and federal constitutions and the Full Faith and Credit Clause of the United States Constitution by certifying the putative class.

Microsoft argues that by recognizing appellees' novel liability theory, the court will violate constitutional due process by applying novel Texas law to plaintiffs in other jurisdictions that do not recognize this theory.

 For a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant contact or significant aggregation of contacts, creating state interest, so that the choice of its law is neither arbitrary nor fundamentally unfair. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). No one will be injured in applying Texas law, however, if it is not in conflict with that of any other jurisdiction connected to this suit. *Phillips Petroleum Co. v. Shutts*, 472 U.S. at 816, 105 S.Ct. at 2976.

Microsoft does not argue that the trial court has made a choice-of-law decision. The court specifically deferred a choice-of-law ruling. Microsoft instead argues that by adopting this novel liability theory the trial court will de facto apply new Texas law to plaintiffs who have no connection with Texas, in violation of due process.

As mentioned above, however, the case is primarily a breach of warranty action in which the plaintiffs contend that Microsoft sold a defective product, in violation of express and implied warranties, and then charged the plaintiffs for correcting the defect. This is not a novel theory. The trial court is not imposing a novel Texas theory on claims that have no significant contact or significant aggregation of contacts to the state.

Microsoft also complains of an inadequately defined class. It says that, because of claim splitting, putative class members will be unable to ascertain whether they should join the class or risk losing any consequential damage claims they might have, and that the claim splitting also prevents the named class members from protecting the rights of absent class members.

As mentioned above, what Microsoft calls claim splitting is not improper under Rule 42. As for the adequacy of notice, the trial court has made no ruling on notice. That is a decision that will be made later, and it will be subject to review. This court cannot tell if class notice violates due process because no class notice has been given.

The class certification does not violate constitutional due process or the Full Faith and Credit Clause.

## VII.

For the reasons stated, we find that the trial court did not abuse its discretion in certifying the class action. The order is affirmed.