FILED
United States Court of Appeals
Tenth Circuit

June 3, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SANDRA ANGEL, individually and
on behalf of all similarly situated
persons,

      Plaintiff - Appellant,

v.

GOODMAN MANUFACTURING
COMPANY, L.P.,

      Defendant - Appellee.

No. 08-5076
(D.C. No. 07-CV-00462-CVE-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

Plaintiff-Appellant Sandra Angel appeals from the district court's grant of

summary judgment in favor of Defendant-Appellee Goodman Manufacturing

Company, L.P. (Goodman). Angel v. Goodman Mfg. Co., L.P., No. 07-CV-0462-

CVE-FHM, 2008 WL 2673353 (N.D. Okla. June 27, 2008). Plaintiff purchased

an air conditioning unit manufactured by Goodman which she contends is

defective because of the corrosive effect of paint applied to the unit. She filed a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

class action complaint alleging breach of express warranty. Following discovery, the district court granted summary judgment in favor of Goodman thereby rendering class certification moot. Id. at *8. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

In August 2000, a property management company purchased an air conditioning unit from an independent distributor for installation in an apartment complex owned by Sandra Angel. Aplt. App. 198; 428-30. The unit was manufactured by Goodman and installed shortly after the purchase date. Aplt. App. 435-38. The warranty stated:

> [T]he parts of air conditioning product(s) . . . is (are) warranted against defects in material or workmanship under normal use and maintenance (a) for a period of five (5) years from the installation date or (b) for a period of sixty-three (63) months from the date of manufacture if the installation date cannot be verified. We will exchange any warranted defective part upon its[] presentation to our distributor by a certified or licensed technician.

Aplt. App. 157. Goodman manufactured the unit in June 2000. Aplt. App. 519-20 at ¶ 5, 522 at ¶ 11 (Blackham Aff.). Plaintiff filed her initial complaint on August 27, 2007. Angel v. Goodman Mfg. Co., L.P., 4:07-cv-00462-CVE-FHM, Doc. 1 (N.D. Okla. August 27, 2007).

Plaintiff maintains that paint used on some 750,000 units, including hers, is corroding the aluminum fins and sometimes causes a white rust to appear. Aplt.

App. 19-20. She also alleges that such corrosion reduces the operating efficiency of the units. Aplt. App. 19. Plaintiff relies heavily upon a prior lawsuit between Goodman and its paint supplier, American Coatings, where Goodman sought damages in excess of $81 million for the corrosive effect of Goodman Black paint on its air conditioners. Aplt. App. 52, 57. As Goodman clarifies, the parties settled that case "for less than one percent of its $81 million demand," Aplt. App. 188, after "it had become apparent that the problem with the paint was not as widespread as Goodman originally had thought," Aplt. App. 254. Based on the claims made by Goodman in the prior case, Plaintiff posits that her air conditioning unit was defective from the date of purchase, as are all the other units that have been painted with the corrosive paint. Aplt. App. 25-26. She further theorizes that she "was injured at the time she purchased the unit because the unit was already corroded, even if that corrosion was not visible yet to the naked eye." Aplt. Br. 5.

Plaintiff depends heavily upon Goodman's evidence in its prior lawsuit against American Coatings. First, Plaintiff relies upon the testimony of Dr. Darlene Brezinski who testified that she "truly believe[d] the degradation process . . . started in the [Goodman] bake oven." Aplt. App. 613, at 77. Dr. Brezinski further agreed with the statement that "all 830,000 units that are in the field that have been painted with Goodman Black will fail ultimately." Aplt. App. 614 at 85. Plaintiff also relies upon the testimony of Dr. Lori Streit who testified that

- 3 -

"[it is] probably true" that "on all of these units corrosion will occur ultimately." Aplt. App. 618 at 101.

In this case, Goodman filed a motion for summary judgment on the grounds that Plaintiff (1) has no evidence that her warranty claim accrued during the warranty period on her air conditioning unit, Aplt. App. 472-74, and (2) has admitted that she did not provide notice of her claim to Goodman prior to filing suit, Aplt. App. 474-77.  The district court then granted summary judgment. Angel, 2008 WL 2673353, at *8.  It relied upon three grounds: (1) Plaintiff's air conditioning unit was not defective during the warranty period; (2) Plaintiff did not provide pre-suit notice of a breach of warranty claim prior to filing her lawsuit to Goodman or anyone else in the distribution chain; and (3) Plaintiff failed to comply with the express terms of her warranty by not presenting the air conditioning unit to Goodman through a certified or licensed technician during the warranty period.  Id. at *4-8.

On appeal, Plaintiff claims that the district court erred (1) in holding that her warranty claim was barred because her warranty expired before a defect arose and (2) in improperly construing the testimony of Goodman representatives Clark and Whittington.  She also challenges the district court's conclusions that she was required (3) to have relied upon any warranty extension and (4) to give pre-suit notice to Goodman.  She also questions (5) whether the making of a warranty claim is a prerequisite to filing suit.

- 4 -

<u>Discussion</u>

We review the grant of summary judgment de novo and apply the same standard as the district court. <u>T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County</u>, 546 F.3d 1299, 1306 (10th Cir. 2008) (citing <u>Timmerman v. U.S. Bank, N.A.</u>, 483 F.3d 1106, 1112 (10th Cir. 2007)). Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we view the evidence and make all inferences in the light most favorable to the nonmoving party. <u>Antonio v. Sygma Network, Inc.</u>, 458 F.3d 1177, 1181 (10th Cir. 2006). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). "A 'complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" <u>Bruner v. Baker</u>, 506 F.3d 1021, 1025 (10th Cir. 2007) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

I. <u>Plaintiff's Warranty</u>

As noted above, the express warranty for Plaintiff's air conditioning unit protected against defects in material or workmanship for five years from the date of installation or sixty-three months from the date of manufacture. Aplt. App.

- 5 -

157. In this case, the record is not clear on the date of installation, but does establish that the unit was manufactured in June of 2000. Aplt. App. 519-20 at ¶ 5, 522 at ¶ 11 (Blackham Aff.). Therefore, the sixty-three-month time period applies, and Ms. Angel's warranty expired in September 2005.

## II. Applicable Law

Both parties agree that, under a choice of law analysis, Texas law governs Ms. Angel's breach of warranty claim. Aplt. App. 13; Angel, 2008 WL 2673353, at *4 n.2. Texas has adopted the Uniform Commercial Code (UCC), including UCC Section 2-313(2)(a) in its entirety. The Texas Business and Commercial Code provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tex. Bus. & Com. Code Ann. § 2.313(a)(1); Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 675 (Tex. 2004). Under Texas law, to successfully bring a breach of express warranty action, a plaintiff must allege: (1) an express affirmation of fact or promise by the seller relating to the goods; (2) that such affirmation became a part of the basis of the bargain; (3) that plaintiff relied upon said affirmation of fact or promise; (4) that the goods failed to comply with the affirmation of fact or promise; (5) that plaintiff was injured by such failure of the product to comply with the express warranty; and (6) that such failure was a proximate cause of plaintiff's injury. Crosbyton Seed Co. v. Mechura Farms, 875

S.W.2d 353, 361 (Tex. App. 1994) (stating the elements for breach of express warranty).

A. Manifestation of a Defect

Goodman argues that Ms. Angel attempts to recover for an unmanifested defect in her air conditioning unit. Aplee. Br. 7. Texas law has yet to recognize a breach of express warranty claim for unmanifested defects in products with distinctly limited useful lives. See DaimlerChrysler Corp. v. Inman, 252 S.W.3d 299, 304 (Tex. 2008) ("[T]he law is not well developed on the degree to which the defect must actually manifest itself before it is actionable."); Compaq Computer Corp., 135 S.W.3d at 679, 680 n.15 (noting that Texas law is unclear as to whether it "permit[s] express warranty claims for unmanifested defects"). Thus, for such products, a claim for breach of express warranty requires that the defect manifest itself. See Microsoft Corp. v. Manning, 914 S.W.2d 602, 609 (Tex. App. 1995) ("[If an item has] a distinctly limited usable life[, a]t the end of the product's life, the product and whatever defect it may have had pass away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for."), abrogated on other grounds by Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430 (Tex. 2007); see also Gen. Motors Corp. v. Garza, 179 S.W.3d 76, 83 (Tex. App. 2005) (finding that a defective brake system did not breach a warranty to repair at the time of sale, but rather breach occurred only if a defect actually arose). The only exception to the general rule that a defect must

manifest itself under Texas law appears to be when an item has an indefinite useful life, such as computer software, making the manifestation of defects more difficult to identify.  Microsoft Corp., 914 S.W.2d at 609.

### B.  Plaintiff's Air Conditioning Unit

Plaintiff argues that the district court improperly granted summary judgment after holding as a matter of law that no warranty claim accrued during the warranty period.  According to Plaintiff, there is a genuine issue of material fact as to whether the defect arose during the warranty period.  Aplt. Br. 9-10.  Plaintiff maintains that the air conditioning unit was defective at the time of purchase because Goodman sold the unit with the defective paint.  Aplt. App. 25-26.  Plaintiff relies upon the evidence of Dr. Brezinski who opined that the corrosion process started in Goodman's bake ovens given the manufacturing process.  Aplt. Br. 9-10.  Goodman counters that because there is no actual evidence of any defect on Plaintiff's particular unit, the mere use of the paint is insufficient to amount to a defect.  Aplee. Br. 7; Aplt. App. 320-26 (Kinsch Aff.), 409.  Further and at best, microscopic corrosion that is not visible and does not affect how the unit functions is an unmanifested defect.  Aplee. Br. 7-8.

We agree.  The useful life of a Goodman air conditioning unit appears to be anywhere between eight and twenty years–thus the general rule requiring manifestation of a defect for an express warranty claim applies.  Aplt. App. 264, at 31 (Whittington Dep.) (suggesting a useful life of fifteen to twenty years), 320-

21 at ¶ 10 (Kinsch Aff.) (suggesting a useful life of eight to ten years). Goodman warranted "against defects in material or workmanship" for either five years from the date of installation or sixty-three months from the date of manufacture. Aplt. App. 157. Plain and simple, the air conditioning unit at issue required no service or repair during the warranty period. Moreover, upon inspection of the unit, no evidence of deterioration or corrosion due to the use of Goodman Black paint existed. Aplt. App. 320-26 (Kinsch Aff.). Instead, the inspection revealed only minimal oxidation and weathering consistent with the unit's age and lack of cleaning. Aplt. App. 320 at ¶ 9, 321 at ¶ 12 (Kinsch Aff.). The inspector concluded that the unit "looks to be in normal condition for a condenser of this quality and age." Aplt. App. 320 at ¶ 9 (Kinsch Aff.).

The record clearly establishes that no defect arose on Plaintiff's particular air conditioning unit during her five-year warranty period. Without any evidence of a defect, the mere use of the paint is insufficient. Plaintiff's unit remained free from defect during its warranty period, and therefore she received precisely what she bargained for. Given no actual breach of express warranty vis-à-vis the paint, the district court properly granted summary judgment on this ground.

Plaintiff additionally argues that two Goodman executives extended her five-year warranty period through statements made in Goodman's prior litigation with American Coatings. Aplt. Br. 11-17; Aplt. App. 623 at 11 (Clark Dep.); Aplt. App. 626 at 30 (Whittington Dep.). Specifically, Plaintiff contends that the

deposition testimony of Gary Clark and Richard Whittington extended her warranty period by indicating that the Goodman Black paint situation was "catastrophic," and that Goodman would waive the standard five-year warranty period for affected air conditioning units.  Aplt. Br. 11-13; Aplt. App. 623 at 11 (Clark Dep.); Aplt. App. 626 at 30 (Whittington Dep.).

Mr. Gary Clark, Vice President of Marketing for Goodman, testified as follows on August 20, 2003:

> In the case of catastrophic failures . . . [l]et's say a failure at greater than five — or let's just use — it's a gray area and it varies.  But let's just say a failure rate greater than five percent, we would tend to call that catastrophic, at which point we would put service policies into place that would enhance the standard warranty in these cases where we have known defects.

Aplt. App. 623 at 11 (Clark Dep.).

Mr. Richard Whittington, another Goodman employee, testified in the American Coatings litigation regarding the warranty period for the air conditioning units affected by the corrosive paint.  In response to the question "Is there any contemplated plan or do you have a contemplated plan in place that after five years . . . you'll stop [any remediation plans] because you'll be out of the warranty period?", he stated,

> No.  It becomes kind of an individual consideration at that point in time.  What is a likely scenario is you have a 150 unit or a 63 unit complex with these units in them.  Let's say they are in year seven, and they are having significant failure rates on these, the fins are deteriorating.  We are going to step up to the plate and take care of the customer. . . .

Aplt. App. 626 at 30 (Whittington Dep.).

We agree with the district court that no reasonable reading of these responses to a hypothetical situation resulted in a global extension of the warranty period. While a court is required to construe summary judgment evidence in the light most favorable to the non-movant, the construction and resulting inferences must be reasonable and allow for a verdict in the non-moving party's favor. See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249-52. This evidence falls far short. Goodman's decision to accommodate an individual customer from time to time and go beyond the warranty, Aplt. App. 536, in no way suggests that Plaintiff's warranty was extended or that the district court somehow resolved credibility issues. Thus, as no defect arose in the five-year warranty period, the district court correctly entered summary judgment for Goodman. It is unnecessary to reach the remaining issues on appeal.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge