**Betty Sue BASHAM, Individually and on behalf of all other similarly situated hands-free two-way radio purchasers sold by Audiovox Corporation, Appellant,**

v.

**AUDIOVOX CORPORATION, Appellee.**

No. 08-05-00052-CV.

Court of Appeals of Texas, El Paso.

Jan. 31, 2006.

Steven C. James, Attorney At Law, El Paso, TX, for Appellant.

Jeanne C. Collins, Kemp Smith LLP, El Paso, TX, for Appellee.

Before Panel No. 5 BARAJAS, C.J., McCLURE, and ABLES, JJ. (ABLES, J., sitting by assignment).

## *OPINION*

ANN CRAWFORD McCLURE, Justice.

Betty Sue Basham appeals the trial court's dismissal of her breach of warranty

claim for lack of standing and its failure to certify a class action. Because we agree that Basham lacked standing, we affirm the judgment of the trial court.

## FACTUAL SUMMARY

On December 20, 2000, Betty Basham purchased four Audiovox two-way radios (walkie-talkies) as a Christmas present for her son who had planned a ski trip with his family. Basham purchased these particular radios because they contained a VOX feature which was voice activated, enabling the user to operate them hands-free. The owner's manual provided these instructions:

**VOX Function**

This feature enables you to have hands-free conversation. When using the external microphone or headset, your voice signal is detected and is automatically transmitted by the radio. The reply audio is received by the radio and is transmitted to the headset. To access VOX function, press Function (F) button repeatedly until VOX icon [icon] flashes. Press the function button again and select one of three (L1, L2, L3) VOX sensitivity levels using the UP [icon] or Down [icon] buttons. L1 setting is most sensitive and L3 is least sensitive. Select L1 when in a quiet environment and L3 for a noisy environment.

One week after Christmas, Basham and her son, Joe Yearwood, tested the walkie-talkies in his office. The radios worked when the talk button was depressed. Yearwood did not try to use the VOX function because he assumed he needed headsets which were not included in the packaging. When Yearwood contacted Audiovox about purchasing headsets, a company representative told him that headsets were unavailable and that he would have to purchase a different model.[1] Yearwood then returned the radios to his mother.

But Basham decided not to return the walkie-talkies for a refund.[2] Instead, she filed a class action lawsuit because Audiovox was selling items that did not perform as warranted. She alleged Audiovox had breached both an express and implied warranty, had violated the Texas Deceptive Trade Practices Act, and had violated the federal Magnuson–Moss Warranty Act. She also filed a motion for class certification involving complainants from sixteen other states. Prior to the class certification hearing, Basham dismissed all claims except the breach of express warranty under Magnuson–Moss.

The trial court denied class certification concluding that Basham lacked standing, that common issued did not predominate over questions affecting only individual members, and that the class action was not a superior method for fair and efficient adjudication of the controversy because Basham had a "simple, obvious and complete remedy available to her." Basham brings seven issues for review. Because the first is dispositive, we need not address the remainder. For the reasons that follow, Basham lacked standing to bring her claim.

## THE REPRESENTATIONS

Basham purchased the radios from Best Buy and, as we have mentioned, she did not return them. The store's refund policy was clearly printed on the receipt—

---

1. Yearwood claimed the representative told him the radios would not operate hands-free. Audiovox countered that even Basham's experts admitted the feature worked; it just didn't work well enough.

2. When asked why she didn't return the radios, Basham answered, "I just—I don't know. I just didn't."

Best Buy would issue a full refund of the purchase price if the product were returned within 30 days of purchase together will all accessories and packaging. This policy was fully supported by a vendor agreement between the store and Audiovox which gave the store the right to return defective products at Audiovox's expense. Best Buy would receive full credit equal to the purchase price of the merchandise.

According to Basham, Audiovox provided two warranties. First, Audiovox expressly warranted that the radios would work hands-free but they did not. Secondly, it provided a 90–day limited warranty:

> AUDIOVOX CORPORATION (the Company) warrants to the original retail purchaser of this product that should this product or any part thereof, under normal use and conditions, be proven defective in material or workmanship within 90 days from the date of original purchase, such defect(s) will be repaired or replaced with new or reconditioned product (at the Company's option) without charge for parts and repair labor.

The company's liability was expressly limited to the repair or replacement of the product and in no event would liability exceed the purchase price. Basham paid $108.23 for the radios.

## STANDING

The requirement of standing is implicit in the open courts provision of the Texas Constitution and contemplates access to the courts only for those litigants suffering an injury. *M.D. Anderson Cancer Center v. Novak,* 52 S.W.3d 704, 708 (Tex.2001). This is true regardless of whether a plaintiff brings an individual suit or a class action. *Id.* at 710. Whether the named plaintiff is a proper class representative is not part of the standing inquiry. *Id.* A named plaintiff must first satisfy the threshold requirement of individual standing at the time suit is filed, without regard to the class claims. *Id.* In other words, a plaintiff who lacks individual standing when suit is filed cannot maintain a class action. *Id., citing O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Consequently, standing requires a showing of damages. "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Novak,* 52 S.W.3d at 708, *citing Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), *quoting Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

### *Standard of Review*

Standing is a purely legal question that we review *de novo. Id.* at 708 (standing is prerequisite to subject matter jurisdiction); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998)(subject matter jurisdiction is a question of law reviewed *de novo* ). Whether a party has standing is predicated upon either statutory or common law authority. *Williams v. Lara,* 52 S.W.3d 171, 178 (Tex.2001). Here, Basham asserted a cause of action based on the Magnuson–Moss Warranty Act. Under the Act, a consumer has standing to assert a claim for breach of express warranty if she is:

> [D]amaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract....

15 U.S.C. § 2310(d)(1). The consumer must also give the warrantor a reasonable opportunity to cure noncompliance:

No action ... may be brought under subsection (d) of this section for failure to comply with any ... written or implied warranty ... unless the person obligated under the warranty ... is afforded a reasonable opportunity to cure such failure to comply.

15 U.S.C. § 2310(e). The parties do not dispute Basham is a consumer for purposes of the Act. They do dispute whether Basham suffered damages.

### Damages

Basham contends she suffered damages because she received defective radios worth less than what she paid for them. She claims this fact alone confers standing under the Act. In support of her argument, she relies upon *Microsoft Corporation v. Manning*, 914 S.W.2d 602 (Tex.App.-Texarkana 1995, pet dism'd). There, the plaintiffs alleged breaches of express and implied warranties, unjust enrichment, violations of the Magnuson–Moss Warranty Act, and violations of the Washington State Consumer Protection Act. *Id.* at 605. These claims were based upon a defect in software that caused some users to lose data. *Id.* at 606. Microsoft offered upgraded software which would correct the problem, but users were required to purchase the upgrade for roughly $10. *Id.* at 606. The court concluded that the plaintiffs never received what they bargained for because the software would not work as warranted, and even if some users never lost data, they nevertheless suffered damages. *Id.* at 609. Basham contends this case is applicable because she and other members of the class suffered damages when the walkie-talkies did not operate hands-free.

She also directs us to *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F.Supp.2d 1069, 1103 (S.D.Ind.2001). There, the plaintiffs claimed damages resulting from the purchase of defective tires. *Id.* at 1101–02. Pertinent to our analysis, the court held:

[T]he Act was created, at least in large part, to provide a federal cause of action for consumers saddled with defective products who otherwise would not have suffered sufficient monetary damage to justify bringing a lawsuit, and therefore may not have had a remedy when their warrantor refused to honor the warranty by repairing or replacing the product or refunding the purchase price.

*Id.* at 1103. In emphasizing the first clause, Basham frames the issue thusly: Can a company lie about its product, offer a refund when caught, and avoid liability? Audiovox emphasizes the latter clause: The Act was created to provide a remedy when the company refuses to honor a warranty by repairing or replacing the product or by refunding the purchase price. We agree with Audiovox and conclude that both *Manning* and *Bridgestone* support our conclusion. Microsoft offered its consumers a software upgrade to fix the glitch, but the consumer had to pay for it. Bridgestone didn't offer a remedy at all.

■ Here, both Audiovox and Best Buy guaranteed a refund, but Basham did not avail herself of the remedy that would have fully compensated her. Audiovox did not fail to honor its 90–day warranty—it was never asked to do so. A "demand" was sent the same day the class action was filed, 107 days after purchase:

[D]emand is hereby made on behalf of Ms. Basham and each member of the class to cure the failure of the FR–530 and the entire 500 Series line of two way radios to comply with their written and implied warranties of 'hands free' capability. In fact this notice is unnecessary because Audiovox knew of the defect at the time of the sales....

Basham had to establish that she was damaged by Audiovox's failure to comply with its warranty. The warranty specified repair, replacement or refund and capped the damages at the purchase price paid. Because she cannot demonstrate she was damaged, Basham does not have standing to assert a claim for breach of express warranty under the Act. We find no abuse of discretion in the trial court's dismissal of the suit. *Novak*, 52 S.W.3d at 711 (if the named plaintiff lacks individual standing, the court should dismiss the entire suit for want of jurisdiction). We overrule the dispositive issue and affirm the judgment of the trial court.