**Opinion issued August 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00422-CV

————————————

**PENTAIR RESIDENTIAL FILTRATION, LLC, Appellant**

**V.**

**PAUL BELSOME, III D/B/A BELSOME H2O INSTALLERS, ARUN ADAT, MAHESH ADI, SHARIF ALI, ARIF BAIG, GLENN BELZ, MICHAEL BILLEH, SANTOSH BIRADAR, OLINDSEY BROWN, SIVA BUDATI, WENQING CAO, RAJESH CHANDRASHEKAR, STEWART CHANG, VENKATA G. CHEETIRALA, HONG CHEN, RONGZHANG CHEN, JOHN CHERIAN, GREGG DIXON, VALIBHAV GANATRA, HARISH GANGASANI, QING GAO, HERBERT GASPARD, SUMITA GHOSH, JANAHAN GNANACHANDRAN, RAJ GORLA, QAMAR HUSSAIN, SHEFALI JAIN, SEHOON JANG, SAUZABH JOSHI, VENKANNA JUPUDY, UPENDRA KAORE, SUPRIYA KUMAR, KUI LIN, ZAINAB MAHIMWALA, JUSTIN MATHEWS, TEJAS MEHTA, PAUL MERCIER, RAMMOHAN MESHINENI, FEROZ MOHAMMED, INDIVIDUALLY ON BEHALF OF ALL SIMILARLY SITUATED PERSONS, JOHN MORGAN, DAN MOSS, PRALHAD MUTALIK, YASER NABI, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED PERSONS, JAMES R. NANCE, III, NABEEL NASIE, DUNG NGUYEN, SUNDAR PANCHAPAKESAN, ASHOK PARUPALLI, NISHANT PATEL, CESAR PINEDO, RAKESH RAO, SHAHRAM SAMANDI, SUDHIR SANCHI,**

**DAVID SHAN, PRITESH SHARMA, KEYUR SHEKHADIA, KANWAL SIDDIQUI, AVINASH SINGH, STACEY STONE, KAUSHIK SUBRAMANIAN, MADJUSUDHAN TEKMAL, KARTHEEK THALAKANTI, JANAK THAPA, MAHADEVAN THIAGARAJAN, CHRISTIAN THOMAS, SHINJIN THOMAS, JOHNNY ULRICH, PRAVEEN VENNAMANENI, SCOTTIE WILCOXSON, RAJESH YEDIA, AND NANYI ZHU, Appellees**

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Case No. 2020-33359**

---

**MEMORANDUM OPINION**

The trial court certified a statewide class of homeowners who contend that defective water control valves designed and manufactured by Pentair Residential Filtration, LLC caused their water softening and filtration systems to fail. The homeowners allege that Pentair breached express and implied warranties and violated the federal Magnuson-Moss Warranty Act ("MMWA"). In this interlocutory appeal, Pentair contends that the trial court abused its discretion by certifying the class because the class representatives lack standing to bring an MMWA claim and the claims based on breach of express and implied warranties do not satisfy the certification requirements in Texas Rule of Civil Procedure 42.

We conclude that the class representatives have standing to assert an MMWA claim. But class certification is impermissible because the certification order does

not adequately address Pentair's defenses or how they affect predominance or state how any individualized issues can be managed efficiently and fairly. Accordingly, we decertify the class and remand to the trial court for further proceedings consistent with this opinion.

## I. Background

Pentair manufacturers electronic valves that control the flow of water into and out of the mineral and brine tanks in water softening and filtration systems. Two of Pentair's water control valves—the Fleck 5810 and the Fleck 5812—are the subject of the warranty-related claims. Neither valve was sold directly to the public. But Pentair sold the Fleck valves as component parts to distributors, who then incorporated the valves into water treatment systems. Dealers bought the assembled systems from the distributors and sold them to homeowners.

In June 2020, dealer Paul Belsome sued Pentair after several water treatment systems he installed for Houston-area homeowners failed.[1] In interrogatory responses, Belsome explained:

> In 2017[,] I began receiving requests for warranty repairs on units that I had installed. . . . I recall many calls about issues with the units running continuously[,] allowing water wasting, and not softening the water entering the customers' homes. I repaired many valves, and for some

---

[1] Belsome also sued his distributor Waterworld USA, Inc.

customers made repeated repairs. Ultimately, I began advising customers that I did not have the parts to permanently fix the problem.

Belsome eventually stopped servicing water treatment systems with Fleck valves, stopped reporting warranty issues to Pentair, and referred his customers to his attorney. Seventy of his customers joined his suit against Pentair.

Belsome and the homeowners contend that the Fleck valves were defectively designed and manufactured. They allege that the Fleck valves relied on a defective piston to direct water in different paths inside the control valve chamber. As shown in the illustration below, the piston has "three shoulders" that "move up and down inside a piston cage with five rubber seals."



The seals block undesired water flow between the multiple chambers inside the control valve. According to Belsome and the homeowners, the valves "inevitably

fail[ed]" when the piston's middle shoulder became stuck at the third seal of the piston cage.

Belsome and the homeowners attributed the piston's failure, at least in part, to the spin welding manufacturing process. Their engineering expert, Dr. A. Shabeer, examined 18 piston assemblies or full control valves with piston assemblies and found fractures on ten pistons, a fracture of one piston rod, minor damage to two seals, and severe damage to one seal. Shabeer opined that the spin welded area at the piston's middle shoulder had displaced weld material (flash) that hindered fusion, created small tears in the third seal rubber gasket, and caused the piston to stick on the gasket inside the cage before eventually breaking because of the force on the piston stem and head. He also opined that, because the piston-case seals at the middle shoulder showed physical damage, the piston was manufactured out of specification and failed because of a manufacturing defect. Belsome and the homeowners assert that this defect restricts water flow, prevents water treatment, causes water to continually run to drain, and requires them to bypass the system.

Based on these allegations, Belsome and the homeowners asserted claims for breach of express and implied warranties and violation of the Magnuson-Moss

Warranty Act (MMWA).[2] The homeowners also pleaded causes of action for strict liability; negligent design, manufacturing, and marketing; and violations of the Texas Deceptive Trade Practices Act. The homeowners sought damages for repair costs, high water bills, and mineral build up on their fixtures and appliances.

Pentair answered and asserted several defenses, including that any damages were unrelated to an act, error, or omission on its part; that its actions were not the proximate or producing cause of any alleged damages; that any damages were instead attributable to the actions of a third-party over whom it had no control or responsibility; and that Belsome and the homeowners had failed to mitigate the alleged damages. Pentair also asserted that the claims lacked any basis in law or fact and should be dismissed.

After substantial discovery, two of the homeowners—Feroz Mohammed and Yaser Nabi—petitioned for statewide class treatment of the warranty and MMWA claims, which Pentair opposed. Pentair argued that class treatment was inappropriate for several reasons, including that there was no agreement about who warranted what

---

[2] The MMWA, 15 U.S.C. §§ 2301–12, "regulates written warranties and provides a private right of action by consumers against manufacturers or retailers who fail to comply with written warranties or implied warranties," *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 337 (Tex. App.—Tyler 2003, no pet.). "[T]he Act specifically provides that state law determines whether or not an implied warranty exists." *Id.* (citing 15 U.S.C. § 2301(7)).

to whom. In support of their motion to certify a class, Mohammed and Nabi presented two warranties, and Pentair had produced a third. Nabi presented a two-page limited warranty from nonparty Fleck Controls, Inc. d/b/a Pentair Water Treatment for "defects in material and/or workmanship under normal use and service for a period of sixty (60) months from the date of shipment . . . ."[3] Mohammed presented a two-page limited warranty from Pentair for "material defects in materials and workmanship under normal use and service for a period of five (5) years from the date of manufacture." And Pentair presented a five-page warranty to "the original purchaser" that the Fleck valves would be "free from material defects in materials and workmanship under normal use and service" for five years from "the date of manufacture."

Pentair also argued that the Fleck valve issues were not widespread and were limited to Belsome's customers in the Houston area who were already parties to the suit, making statewide class treatment inappropriate. Pentair asserted that the trial would have to resolve individual questions that could not be managed efficiently or fairly as a class, including whether:

---

[3]     Pentair's expert, Mark Allen Lewis, testified that this limited warranty was issued in 2001 and predated the Fleck valves at issue.

- The class member's Fleck valve had manifested the alleged defect;

- The class member's water system was installed properly, in the appropriate environment, and after the water was tested for chemicals that could damage the valve or cause a malfunction;

- The class member received a warranty and, if so, the warranty's specific terms, exclusions, and disclaimers;

- The class member made a warranty claim, and provided notice of an alleged defect, to Pentair;

- Pentair cured the issue or improperly refused the warranty claim;

- The class member relied on the warranty; and

- The class member is entitled to a new valve, water system, or some other relief under the warranty.

After a hearing, the trial court certified the class, naming Mohammed and Nabi as class representatives. With certain exclusions not relevant here, the class certification order defined the class as:

> All individual persons in the State of Texas who, for purposes other than resale, purchased and/or paid for a Pentair Fleck 5810 or 5812 or a water filtration/softener system incorporating a Pentair Fleck 5810 or 5812.

The order lists thirteen issues of law and fact common to the class members, mainly related to whether the Fleck valve was defective. The trial court found common questions about whether the Fleck valve was defective because:

- a piston head or stem fracture keeps it from operating properly;

- the middle piston shoulder sticks at the third seal of the piston cage;

- the design uses a spin welding technique to construct the piston;

- the spin welded middle shoulder causes small tears in the third seal rubber gasket, which ultimately cause the piston to stick on the gasket inside the cage and create unsustainable force on the piston stem and head;

- the sticking causes the valve to not operate properly;

- it either restricts the flow and fails to filter water or the valve fails to seal and water continually runs down the drain;

- it fails to filter or soften water when the valve is stuck, which allows water mineral buildup on fixtures, on bath and kitchen surfaces, inside pipes, and inside appliances; and

- the stuck valve allows water wasting.

In addition, the trial court found common questions of whether the defective valves deprived the class of the benefits of the bargain they made when they bought their home water treatment systems, whether Pentair is liable to the class for damages, and, if so, the nature and extent of such damages.

The trial court found these common issues would predominate over questions that might affect individual class members at trial. While the certification order lists Pentair's defenses, it does not explain how the defenses or individual issues identified by Pentair would be managed at trial. Instead, the trial court found that "there are no issues of law or fact affecting only individual class members [because] each purchased the allegedly defective Fleck and received the same Pentair express

warranty." The order states the trial court's plan "to try the case in a single jury trial" after publishing notice of the class.

## II. Class Representatives' Standing under the Magnuson-Moss Warranty Act

Pentair argues that the class representatives, Mohammed and Nabi, lack individual standing to bring a claim under the MMWA because they did not make a warranty claim before they sued and thus did not give Pentair the statutorily required opportunity to cure any warranty issue.[4] And because a plaintiff must have individual standing to bring a claim on behalf of a class, Pentair says the MMWA claim must be dismissed for lack of subject matter jurisdiction.

### A.    Applicable law and standard of review

The requirement that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a "person for an injury done him." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440,

---

[4]    Pentair does not dispute Mohammed's and Nabi's individual standing to assert breach of express and implied warranty claims under state law. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 153 (Tex. 2012) (recognizing that standing involves claim-by-claim analysis and that a plaintiff need not have standing on all claims of the purported class to seek class certification).

444 (Tex. 1993); *see* TEX. CONST. art. I, § 13. A court has no jurisdiction over a claim made by a plaintiff without standing to assert it. *Tex. Ass'n of Bus.*, 852 S.W.2d at 444. To have standing, a plaintiff must be personally aggrieved, meaning his alleged injury must be concrete and particularized, actual or imminent, and not hypothetical. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). Texas courts have sometimes misapplied the label "standing" to statutory or prudential considerations that do not implicate subject matter jurisdiction but determine whether a plaintiff falls within a class of persons authorized to sue or has a valid cause of action. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773–74 (Tex. 2020). Whether a plaintiff has shown "his right 'to go forward with [his] suit' or 'satisfied the requisites of a particular statute' pertains in 'reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court.'" *Id.* at 774 (quoting *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). Thus, a plaintiff does not lack standing in the proper jurisdictional sense simply because he cannot prevail on the merits; a plaintiff lacks standing because his alleged injury is too slight for the courts to remedy. *Inman*, 252 S.W.3d at 305.

The standing requirements extend to class actions. *Sw. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 915 (Tex. 2010). A plaintiff who brings a class action, rather than just suing on his own behalf, must still prove his individual

11

standing to sue. *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710 (Tex. 2001) ("before Rule 42's requirements [for class certification] are considered, a named plaintiff must first satisfy the threshold requirement of individual standing"); *see Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 153–54 (Tex. 2012) ("the named plaintiff cannot 'borrow' standing from the class, nor does he otherwise get a 'pass' on standing"). A plaintiff need not have standing on all the class's claims. *Heckman*, 369 S.W.3d at 154. So long as he "has standing on *some* claim, he has standing to pursue class certification as to that claim." *Id.* But any claim for which he lacks standing must be dismissed. *Id.* at 150 ("if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it"); *see USAA Cas. Ins. v. Letot*, 690 S.W.3d 274, 282 (Tex. 2024) (dismissing class claim for injunctive relief because named plaintiff lacked individual standing as to that claim but proceeding to merits of class certification on claim for damages because plaintiff had standing as to that claim).

Whether a party has standing to bring a claim is a question of law we review de novo. *Heckman*, 369 S.W.3d at 150; *Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

**B.     The MMWA's opportunity-to-cure requirement is not jurisdictional**

On behalf of the class, Mohammed and Nabi have asserted a claim against Pentair under the MMWA. *See* 15 U.S.C. §§ 2301–12. The MMWA regulates written warranties and provides a federal cause of action to a consumer who is damaged by the failure of a supplier, warrantor, or service provider to comply with written or implied warranties. *See id.* § 2310(d)(1); *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 337 (Tex. App.—Tyler 2003, no pet.); *see also Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1060–61 (5th Cir. 1984) ("[t]he [MMWA] was Congress's first comprehensive attempt to deal at the federal level with problems of consumer warranties," which the "draftsmen believed . . . often were too complex to be understood, too varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection" (internal quotations omitted)). A plaintiff must show not only that a product failed to live up to its written or implied warranties, but also that the seller had an "opportunity to cure" the alleged defect and failed to do so. *See* 15 U.S.C. § 2310(e). The MMWA prohibits the filing of an individual action unless the defendant has been given a "reasonable opportunity to cure," but it makes a limited exception for class action cases. *See id.* Section 2310(e) states:

13

No action (*other than a class action . . .* ) may be brought under subsection (d) for failure to comply with any obligation under any written or implied warranty or service contract, and *a class of consumers* may not proceed in a class action under such subsection with respect to such a failure except to the extent the court determines necessary to establish the representative capacity of the named plaintiffs, unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply. *In the case of such a class action . . .* brought under subsection (d) for breach of any written or implied warranty . . . , such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class. In the case of such a class action which is brought in a district court of the United States, the representative capacity of the named plaintiffs shall be established in the application of rule 23 of the Federal Rules of Civil Procedure.[5]

*Id.* (emphasis added).

Whether this language implies that a class action, unlike an individual suit, may be filed before the end of a reasonable cure period is the subject of some debate in the federal courts. *Compare Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1004 (D.C. Cir. 1986) ("[A] plaintiff may *file* a class action, but may not proceed with that action, until she has afforded the defendant a reasonable opportunity to cure its alleged breach."), *and Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1044–45 (S.D. Tex. 2016) (declining to dismiss class action on basis of not giving the

---

[5]  Texas Rule of Civil Procedure 42, which governs class certification, is patterned after Federal Rule of Civil Procedure 23; consequently, federal class-certification authority is persuasive. *See Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000).

defendant an opportunity to cure because class suit may be filed before cure), *with*

*Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 937 (M.D. Tenn. 2010) (holding, without considering the phrase "other than a class action," that plaintiffs could not maintain their MMWA claim because they did not give the manufacturer notice that they were acting on behalf of a class before suing). Without discussing the split of authority or the language in the MMWA's cure provision specific to class actions, Pentair asserts that Mohammed and Nabi lack standing, in the true constitutional sense of the term, to assert a class claim because they did not individually comply with the cure provision before suing.

In support, Pentair cites *Basham v. Audiovox Corp.*, 198 S.W.3d 9 (Tex. App.—El Paso 2006, no pet.). There, the purported class representative Basham sued manufacturer Audiovox, for breach of express warranty under the MMWA because the two-way radios she bought did not work as promised. *Id.* at 11. Audiovox had an agreement with the retailer Basham bought the radios from to credit the retailer for the full purchase price of any returns made under the warranty. *Id.* at 12. But Basham never tried to return the radios for a refund. *Id.* at 11. Instead, she filed a class action. *Id.* The trial court dismissed Basham's suit, concluding that she lacked standing. *Id.* The appellate court affirmed, holding:

> Basham had to establish that she was damaged by Audiovox's failure to comply with its warranty. . . . Because she cannot demonstrate she was damaged, Basham does not have standing to assert a claim for breach of express warranty under the [MMWA].

*Id.* at 14.

Pentair interprets *Basham*'s holding as requiring a named plaintiff to give a warrantor a chance to cure before suing on behalf of a class for violations of the MMWA. We read *Basham* more narrowly for two reasons. First, *Basham* did not hold that the class action must dismissed because the purported class representative did not show compliance with Section 2310(e)'s cure provision. Although it quoted part of Section 2310(e), the court omitted the phrase "other than a class action" from its quotation of Section 2310(e) and did not distinguish between class actions and claims brought by individual plaintiffs, even though the statute does. *Compare id.* at 13, *with* 15 U.S.C. § 2310(e); *see also Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (courts consider each word the Legislature has chosen for a statute and presume that every word has been intentionally used for a purpose). Because of this omission *Basham* is not persuasive authority on whether Mohammed and Nabi had to show that they provided Pentair an opportunity to cure the alleged warranty violations before asserting a claim under the MMWA on behalf of the class.

Second, even if *Basham* can be read as Pentair suggests, we disagree that noncompliance with Section 2310(e)'s cure provision strips a court of subject matter

16

jurisdiction. Instead, we view compliance with Section 2310(e)'s cure provision as a statutory requisite to relief, not a constitutional one. That view adheres to case law distinguishing between constitutional standing requirements and statutory requirements. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 & n.4 (2014) (question whether plaintiff has statutory cause of action is not one of constitutional "standing" but of statutory interpretation); *Pike*, 610 S.W.3d at 774 (question whether plaintiff has satisfied the requisites of a particular statute relates to the plaintiff's right to relief rather than the court's subject matter jurisdiction); *Nephrology Leaders & Assocs. v. Am. Renal Assocs. LLC*, 573 S.W.3d 912, 915–17 & n.5 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (distinguishing between constitutional standing and statutory requirements and explaining why using the term "standing" to refer to both can be misleading). It is also consistent with the federal courts' treatment of noncompliance with Section 2310(e)'s cure provision as a failure to state a claim rather than a jurisdictional defect. *See, e.g.*, *Rosa*, 177 F. Supp. 3d at 1042–44 (considering MMWA cure provision in context of motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6)); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 814, 824–26 (S.D. Ohio 2012) (same).

17

Still, we must examine our jurisdiction any time it is in doubt. We conclude Mohammed and Nabi have standing, in the true constitutional sense, to assert an MMWA claim on behalf of the class because, unlike the class representative in *Basham*, they allege a redressable injury. Nabi alleges that his water treatment system with a Pentair valve was installed in April 2017. The next year, he began noticing mineral buildup on his plumbing fixtures. And in 2019 or 2020, he experienced "white colored water" inside his home and leaking from his water treatment system, which was running continuously to drain. Although Belsome repaired the Fleck valve, Nabi's home water treatment system continued not to function. Similarly, Mohammed alleged that his home water treatment system was installed in June 2017 and, within a year, began to run continuously and leak. Although Belsome repaired the Fleck valve in 2018, the system continued to malfunction. Mohammed and Nabi allege that the repair option Pentair had offered through Belsome did not provide a permanent fix, leaving them with a redressable injury. *Cf. Equistar Chems., LP v. ClydeUnion DB, Ltd.*, 579 S.W.3d 505, 519 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("although permitting the seller to cure the non-conformity might operate to lessen or mitigate the buyer's damages, the buyer's refusal to allow the seller to cure, where the non-conformity might have been cured by the seller, does not in any way diminish the buyer's right of

18

recovery"). Presuming these allegations are true, *see Tex. Ass'n of Bus.*, 852 S.W.2d at 446, we conclude Mohammed and Nabi have a redressable injury sufficient to confer them with individual standing to assert claims on behalf of the putative class.

We overrule Pentair's standing challenge.

### III. Class Certification

As to the merits of the certification order, Pentair contends the homeowners did not meet "any, let alone all," of the requirements for class certification in Texas Rule of Civil Procedure 42.

### A.    Standard of review and applicable law

"A class action is an extraordinary procedural device designed to promote judicial economy by allowing claims that lend themselves to collective treatment to be tried together in a single proceeding." *Reimer v. State*, 392 S.W.3d 635, 639 (Tex. 2013); *see Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000). We review the trial court's decision to certify a class for an abuse of discretion. *Mosaic Baybrook One, L.P. v. Cessor*, 668 S.W.3d 611, 617 (Tex. 2023); *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008). Typically, under the abuse-of-discretion standard, we indulge every presumption in favor of the trial court's decision. *Bowden*, 247 S.W.3d at 696; *Mosaic Baybrook One, L.P. v. Simien*, 646 S.W.3d 847, 853–54 (Tex. App.—Houston [1st Dist.] 2020), *aff'd*, 674 S.W.3d

19

234 (Tex. 2023). But not on certification issues. *Bowden*, 247 S.W.3d at 696. Compliance with the rule governing class certification—Texas Rule of Civil Procedure 42—must be shown and "cannot merely be presumed." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002).

The trial court must rigorously analyze whether the certification requirements in Rule 42 have been met. *Bowden*, 247 S.W.3d at 696. All class actions must satisfy the four threshold requirements under Rule 42(a) and at least one of the requirements under Rule 42(b). *Citizens Ins. of Am. v. Daccach*, 217 S.W.3d 430, 438 (Tex. 2007). The four threshold requirements under Rule 42(a) are:

> (1) numerosity—the class is so numerous that joinder of all members is impracticable; (2) commonality—there are questions of law or fact common to the class; (3) typicality—the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation—the representative parties will fairly and adequately protect the interests of the class.

*Id.* (citing TEX. R. CIV. P. 42). Litigants relying on Rule 42(b)(3), as Pentair does, must also show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. 42(b)(3).

In applying Rule 42, the court's task "is to correctly understand the law governing the nature and elements of the claim and to gauge the claim's suitability

20

for class resolution on the basis of that understanding." *Am. Campus Cmtys. v. Berry*, 667 S.W.3d 277, 285 (Tex. 2023). "To be sure, the court's task at the class certification stage is not to set out to decide the merits of the lawsuit," *id.*, so it need not settle every legal dispute before certification. *Cessor*, 668 S.W.3d at 618. But the certification order must "identify the specific causes of action to be decided" and "indicate how they would be tried or the substantive issues that would control their disposition." *State Farm Mut. Auto. Ins. v. Lopez*, 156 S.W.3d 550, 557 (Tex. 2004); *see also Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (trial courts "must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution"). In addition, the court must resolve legal disputes that "[a]ffect . . . the requirements for class certification," *Exxon Mobil Corp. v. Gill*, 299 S.W.3d 124, 129 (Tex. 2009), and "respond to the defendants' legitimate protests of individualized issues that could preclude class treatment." *Chavez*, 957 F.3d at 546; *see also Prantil v. Arkema Inc.*, 986 F.3d 570, 579 (5th Cir. 2021) ("A certification order ought to reflect the district court's consideration of a defendant's weightiest arguments against certification.").

"Although it may not be an abuse of discretion to certify a class that could later fail," it is "improper to certify a class without knowing how the claims can and

will likely be tried." *Bernal*, 22 S.W.3d at 435. To that end, a certification order "must state," among other things, (1) "the elements of each claim or defense asserted in the pleadings"; (2) "why the issues common to the members of the class do or do not predominate over individual issues"; and (3) "how the class claims and any issues affecting only individual members, raised by the claims or defenses asserted in the pleadings, will be tried in a manageable, time efficient manner." TEX. R. CIV. P. 42(c)(1)(D)(i), (vi), (viii). We refer to this as a "trial plan." *Cessor*, 668 S.W.3d at 618. Mandating that trial courts proceed step by step through these requirements both guides trial courts in "fulfill[ing] [their] obligation to rigorously analyze all certification prerequisites" and "allow[s] reviewing courts to assure that *all* [prerequisites] for certification under Rule 42 have been satisfied." *Lopez*, 156 S.W.3d at 556.

**B.    The certification order does not adequately address Pentair's defenses**

Pentair argues that the trial court took a "certify now and worry later" approach that did not comply with Rule 42(c)(1)(D) because the trial court summarily concluded that no individual issues exist for trial and thus did not explain, among other things, why the common issues predominate or how the individual issues and Pentair's defenses could be handled in a single trial. The homeowners

respond that the certification order addresses every element required by Rule 42 and rigorously analyzes Pentair's defenses.

The adoption of a trial plan under Rule 42(c)(1)(D) is not a mere formality. *Stromboe*, 102 S.W.3d at 689. As stated, "[t]he formulation of a trial plan assures that a trial court has fulfilled its obligation to rigorously analyze *all* certification prerequisites, and understands the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Lopez*, 156 S.W.3d at 556 (internal quotation omitted). "[C]orrectly identifying the elements of the claim[s] and defenses is an essential, foundational step in the class certification process, which cannot be put off until after certification." *Cessor*, 668 S.W.3d at 626 (internal quotation omitted). "Rule 42(c)(1)(D) requires a trial court to either dispose of a defense on the merits before certifying a class or address [each] defense in its certification order and explain how it will be tried." *Simien*, 674 S.W.3d at 264.

Generally, "[t]o establish a breach of warranty claim, a plaintiff must prove the existence of a warranty and that the breach thereof caused the plaintiff's injuries." *Munoz v. Gulf Oil Co.*, 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Pentair pleaded several defenses denying responsibility for the damages the homeowners allege. Among other things, Pentair alleged that

23

none of its acts or omissions were a proximate or producing cause of the alleged damages; that the damages were attributable instead to the actions of Belsome, a third-party over whom Pentair had no control; and that at least some homeowners had failed to mitigate their damages by failing to comply with claim procedures and give Pentair notice and an opportunity to cure any warranty issues. By opposing class certification, Pentair made the trial court aware of the need to address those defenses if it certified a class. And although the trial court listed Pentair's defenses, we find the certification order is wanting in its answer to Pentair's argument that a trial of class claims would devolve into individualized inquiries into warranty coverage, causation, and damages.

For instance, the trial court found in the certification order that there are no issues of law or fact affecting only individual class members because each homeowner bought an allegedly defective Fleck valve and received the same Pentair warranty. The basis for this conclusion is unclear considering three warranties have been produced—two by the homeowners and one by Pentair—and thus there is no agreement as to who warranted what to whom. Other parts of the certification order suggest the trial court concluded that any differences among the warranties were meaningless because each warranty obligated Pentair to provide Fleck valves free

24

from defects in materials and workmanship for five years and there is evidence the Fleck valves have a common defect.

But Pentair has asserted defenses based on lack of warranty coverage or other possible explanations for why a piston may become stuck or a valve may stop working properly. Relevant here, the Nabi warranty excludes "[p]roblems resulting from failure to comply with installation instructions or drawings, or improper installation." Both the Mohammed and Pentair warranties exclude not just installation problems but also problems "resulting from failure to comply with . . . maintenance instructions or . . . improper . . . maintenance." Both the Mohammed and Pentair warranties also state, under exclusions, that pistons and seals exposed to certain contaminants, including chloramines greater than 4 milligrams per liter ("mg/L"), must be maintained as part of a yearly service schedule. The Pentair warranty further excludes "[d]amage or failure of a Product or Part caused by friction, wear, chemical attack, or debris build-up on Wear Parts," which include "pistons" and "seals."

Pentair warned in its product materials that exposure to certain chemicals— including chloramine above 4 mg/L—can cause the rubber valve seals to swell and expand, which in turn, can cause the valve piston to get stuck. As shown by water quality testing at some class members' homes during litigation, water chemistry,

25

including chloramine levels, can vary from home to home. Pentair's expert report included chloramine concentrations in water samples collected from Houston Public Works between 2017-2021, showing variance and some levels that exceeded 4 ppm or 4 mg/L. And Belsome testified that he did not test his customers' water for chloramines before installing the systems. And though the product manuals required installation in a dry location, Belsome installed about 20% of the homeowners' systems outside where they might be exposed to the elements.

In short, there are warring factual contentions that may affect individual warranty coverage, causation, and whether the Fleck valves are problematic at large, statewide, or primarily for Belsome's Houston-area customers. Based on its pleaded defenses, Pentair has shared its intention to bring individual challenges related to the installation and maintenance of individual class member's water treatment systems.

The difficulty is we cannot tell whether these issues will be a factor at trial—particularly considering the expansion of the class beyond Belsome's customers in the Houston area to the entire state—or can be dealt with efficiently and fairly. The certification order does not address Pentair's defenses in any meaningful way. That is, the trial court did not require their resolution before certification, and the certification order does not contemplate any way to address them during trial (e.g., as part of subclasses). *See Simien*, 674 S.W.3d at 264–65. The trial plan states only

a plan to "try the case in a single jury trial" and that, "[b]ased upon the representations of [the homeowners]," the trial may consist of testimony from the putative class representatives, their experts, Belsome, the distributor's and Pentair's corporate representatives, and class counsel with respect to attorney's fees. Further, the certification order states that "[w]hether Pentair will choose to call any witnesses is presently unknown." Without analysis of Pentair's defenses, we are unable to judge whether the common issues relating to the alleged design and manufacturing defects of the Fleck valves can be expected to predominate over individualized issues or how any individualized issues may be addressed efficiently. *See* TEX. R. CIV. P. 42(c)(1)(D)(i), (vi), (viii).

The failure to address Pentair's defenses and evaluate how they affect predominance is an abuse of discretion. *See id.* at 264; *IMT Pavilion III LP v. Mendez*, No. 01-18-00980-CV, 2024 WL 3862808, at * (Tex. App.—Houston [1st Dist.] Aug. 20, 2024, no pet. h.) (mem. op.) (trial court's failure to state defensive elements and evaluate how they affected predominance was error); *see also Chavez*, 957 F.3d at 549 (reversing a class action where the district court responded to "warring factual contentions" concerning putatively common issues, with a "thin survey" and "unsupported assurance" as explanations for why predominance is satisfied). Accordingly, we sustain Pentair's issue on noncompliance with Rule

27

42(c)(1)(D). Without addressing Pentair's challenges based on Rule 42's other requirements, *see* TEX. R. APP. P. 47.1, we hold the trial court erred in certifying the class action.

## Conclusion

We reverse the trial court's class certification order and remand to the trial court for further proceedings consistent with this opinion.

Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.